| 62 | 433 |
| 63 | 478 |

A. T. FABER v. CHICAGO GREAT WESTERN RAILWAY COMPANY.[1]

Nov. 15, 1895.

Nos. 9545—(91).

**Railway—Regulation for Collection of Fares.**

A regulation of the defendant, intended to secure the orderly and certain collection of fares or tickets from all passengers on its suburban railway train, considered, and *held* to be a reasonable one, which its conductor was legally justified in enforcing against the plaintiff, although he had no previous notice of it.

**Findings Sustained.**

Evidence considered, and *held* to sustain the findings of fact by the trial court.

[1] Reported in 64 N. W. 918.

Appeal by plaintiff from an order of the municipal court of St. Paul, Twohy, J., denying a motion for a new trial. Affirmed.

*Jones & McMurran*, for appellant.

*Dan. W. Lawler*, for respondent.

START, C. J. Action to recover damages for an alleged wrongful assault upon the plaintiff and his expulsion from the railway train of the defendant. Trial by the court, without a jury. Judgment ordered for the defendant, dismissing the action, and the plaintiff appeals from an order denying his motion for a new trial.

The train in question was a motor or surburban train, from South St. Paul to St. Paul, a distance of some five miles, and consisted of a smoking car at the rear, and two passenger coaches in front of it. There were some 225 passengers on the train. It is claimed by the defendant that in order to collect the fares or tickets on its surburban trains, and particularly on this one, it was necessary to have a conductor and a collector, one of whom was required to commence at the front of the train, and the other at the rear, and work towards each other, collecting fares or tickets from all passengers until they met; that, to secure the orderly and certain collection of fares and tickets from all passengers, and to prevent those so disposed from avoiding the payment of their fares, it made the regulation that the conductor or collector should not permit passengers to go past him into his part of the train where he had completed his collection until the entire collection was completed, unless they presented a ticket or had already paid their fare, and assured (that is, satisfied) such conductor that they had done so. This regulation, as applied to a suburban train, is a reasonable one; for, without it or a similar one, it would be practically impossible, on crowded trains, to prevent dishonest persons from riding without paying their fares. And, being reasonable, it was not necessary that plaintiff should have had notice of it or have assented to it, for he accepted his ticket subject to the implied condition that he would conform to all necessary and reasonable regulations. A carrier cannot make and enforce unnecessary and unreasonable regulations, which subject the passengers to annoyance or inconvenience. But the regulation in question was both necessary and reasonable, and, for a persistent refusal to comply with it,

the conductor would be justified in ejecting the perverse passenger. Hutchinson, Carr. § 587.

The only other question of importance in the case is whether the evidence sustains the findings of the court.    It is admitted that the plaintiff purchased a ticket from the defendant which entitled him to ride on the train from South St. Paul to St. Paul; that he was lawfully on the train; and that his ticket was accepted by the collector of the train; but as to what transpired subsequently the evidence is conflicting, so much so that a finding for either party would be sustained.    There is nothing in the evidence which would make it error for the trial court to accept and act upon the evidence of the defendant where it conflicts with that of the plaintiff.    The question, then, is whether or not the evidence on the part of the defendant, if true, sustains the finding.

Such evidence tends to show that the plaintiff and his friend boarded the smoking car of the train (the rear one); that the collector, Wright, was collecting in this car, and the conductor, Bryant, in the front car, and that they were working towards each other, as required by the regulation; that, after Wright had punched the tickets of the plaintiff and friend, they started to go forward into another car, and, as they passed the collector, the friend said to him, "You have my fare." He replied, "Mr. Bryant don't know you;" and they passed on without further objections from the collector.    The evidence of the conductor as to what took place when the parties met is as follows:    "I took the tickets in the first coach, and I had got past the stove in the first coach, and I met those two gentlemen, and I asked them for their tickets, and they said: 'We paid our fare once, and we ain't going to pay it again.'    And I said: 'Wait till we come to that boy and see whether or no he collected your fares or not.    You will please go back to him, and I will find out whether he has got your fares or not.'    And they refused to go back, and refused to stay there until I met the boy; and I told them that they could not go past me until they had paid their fare, or waited until I had seen the boy; and they refused to go back, and said they would go past me, and started to go past, and I stopped them."    His evidence tends further to show that when the parties refused to go back, and attempted to pass him, he attempted to push the friend back by placing his hands

against him; he also took hold of the plaintiff; that an unseemly tussle ensued between the friend and the conductor, with some profanity on each side, in which the conductor was so roughly used that his collar was torn off, and his neck scratched so that it bled; that he then told the parties they would have to get off the train or pay their fare. They said they would get off, and did so, without objection or protest, and afterwards boarded the train again, and rode to their destination. The conductor admits that neither of the parties touched him until he used force to prevent them from passing him. Such is substantially the conductor's version of what took place, and he is corroborated in material particulars. There is no evidence that the conductor used any unnecessary or unreasonable force to prevent the parties from passing him.

If the evidence on the part of the defendant, especially that of the conductor, is true,—and of this the trial court was the judge,—he was legally justified in using reasonable force to prevent the plaintiff from passing him, and in ordering him to leave the train or pay his fare. We are of the opinion that the findings of the trial court are supported by the evidence.

Order affirmed.