17 So.2d 679

**MESSER v. SOUTHERN AIRWAYS SALES CO. et al.**

6 Div. 170.

Supreme Court of Alabama.

April 20, 1944.

Hugh A. Locke and Wade H. Morton, both of Birmingham, for appellant.

Harsh & Hare, of Birmingham, for appellees.

LIVINGSTON, Justice.

This is a suit at law by Glenn E. Messer against Southern Airways Sales Company, Inc., a corporation, to recover damages for the alleged refusal by the defendants to furnish or sell to plaintiff gasoline on the premises of the Municipal Airport of Birmingham, Alabama, for use in his airplane.

The complaint as amended contains two counts. Demurrers were sustained to both counts; whereupon plaintiff in the court below (appellant here) took a non-suit, and brings this appeal.

Count 3 claims damages for the unlawful interference with appellant's business, as a natural and proximate consequence of appellee's failure to furnish to appellant its services and commodities devoted to a public use.

Count 4 claims damages for the breach of appellee's duty to furnish appellant services and commodities of appellee devoted to a public use.

In respect to the questions involved the material allegations of the two counts are the same. In substance, it is alleged that at the time the matters and things complained of occurred, appellant was an airplane pilot, licensed by the United States Administrator of Civil Aeronautics, and was operating an aircraft, which had been certified as airworthy by said administrator,.

in commerce between a point within the State of Alabama and a place within other states of the United States; and that appellant flew his said airplane into the Municipal Airport of Birmingham, Alabama, through the civil airways as designated by said Administrator of Civil Aeronautics; that said Municipal Airport was regularly used by aircraft for receiving and discharging passengers and cargo, and was designated by the said Civil Aeronautics Administrator a control airport, and as a designated landing area, under section 60,950 of the Civil Air Regulations, and is situated and located in civil airways, designated as such by said administrator, and is a part of an airway traffic control area, as provided by Civil Air Regulations, as promulgated by the Civil Aeronautics Board appointed under the Civil Aeronautics Act of 1938, as amended in 1940; that the appellee had been granted by contract the sole concession of said airport for selling gasoline intended for use as a motor fuel for airplanes; and that appellee was holding itself out to that part of the public which requires or demands gasoline as being ready, willing and able to furnish said gasoline; that appellant, in reliance upon said holding out, presented himself in a proper manner and at a proper time, and demanded of appellee gasoline for his airplane, and tendered to appellee its charges or price therefor, and that appellee refused to sell gasoline to appellant to his great damage, the details of which he sets forth.

Further, it is alleged in substance that the contract between the City of Birmingham, the owner of the Birmingham Municipal Airport, and appellee, under and by virtue of which appellee operated or controlled the gasoline concession at said airport, contained the following provisions or stipulations:

"5. To the end of preventing the possibility or probability of interference by Glenn E. Messer with the students, patrons and operations of the licensee under the licenses herein granted (as well as for other ends not pecularly affecting the licensee), the city agrees that it will not permit or allow, but will prevent, entry by said Glenn E. Messer upon any portion of said airport within the fence which encloses the hanger and flying field, except the concrete covered portion of such fence-enclosed area immediately north of the terminal building more particularly described in resolutions heretofore adopted by the city commission.

"The licensee shall not furnish or supply, or agree to furnish or supply, any services or commodities on said airport to any person barred from said airport by the city commission."

Attached to and made a part of each count of the complaint are several resolutions adopted by the City Commission of the City of Birmingham barring appellant from the Municipal Airport and the use of its facilities, or denying appellant the right to go upon or use said airport or any of its facilities, for and on account of the violation by him of the rules and regulations adopted by the city commission for the operation of said airport.

Appellant insists that the Birmingham Municipal Airport is a public utility; and, further, that appellee, under its concessions contract with the city, is operating a public utility, and has violated its duty to him in refusing to sell him gasoline for the operation of his airplane.

The argument is made that the resolutions denying to appellant the use of the airport and its facilities are null and void because they were adopted by the city commission without notice to him, and without an opportunity to be heard or represented by counsel, and that the city commission was without jurisdiction in the premises; that said resolutions are violative of sections 1, 6 and 22 of the Constitution of Alabama of 1901, and the Fifth and Fourteenth Amendments to the Constitution of the United States, and of the Civil Aeronautics Acts of 1938, as amended in 1940, of the Congress of the United States, 49 U.S.C.A. § 401 et seq.

The same argument is made in respect to the validity of the above mentioned stipulations or provisions contained in the concession contract between appellee and the City of Birmingham.

We may concede for the sake of argument, without deciding, that the Birmingham Municipal Airport is a public utility, and that appellee in its operation of the gasoline concession at said airport was operating a public utility.

Section 28, Title 4, Code of 1940, provides as follows:

"Any municipality which has established, or which shall hereafter establish, a municipal airport shall have authority to furnish or supply upon said airport to persons and

aircraft thereon, for reward of compensation, goods, commodities, area, facilities and services convenient or useful to the owners, operators and users of aircraft, and to persons upon said airport, including, without limiting the generality of the foregoing, food, lodging, shelter, lawful drinks, confections, reading matter, oil, gasoline, motors and aircraft, motor and aircraft parts, space in buildings, space for buildings and structures, and the service of mechanics, instructors and hostlers. And such municipality may, for reward or compensation, confer upon individuals, firms, corporations or companies, the privilege or concession of supplying upon such airport all or any part of the goods, commodities, things, services and facilities in this section authorized to be supplied."

It is fundamental that if the City of Birmingham may lawfully bar appellant from the Municipal Airport, that is to say, deny to him the right to use it and its facilities, and had done so, the appellee was under no duty to furnish him gasoline for his airplane.

█ The rule governing the duty of public service corporations or companies to serve the public is well stated in the case of Birmingham Railway, Light & Power Co. v. Littleton, 201 Ala. 141, 77-So. 565, 569, as follows:

"This duty to serve the public exists independent of statutes regulating the manner in which public service corporations or companies shall do business. It is imposed upon the public service corporation because it is organized to do a business affected with a public interest, and because the corporation has held itself out to the public as being willing to serve all members thereof. Birmingham Waterworks Co. v. Brown, 191 Ala. 457, 67 So. 613, L.R.A.1915D, 1086; Snell v. Clinton Electric Light Co., 196 Ill. 626, 63 N.E. 1082, 58 L.R.A. 284, 80 Am.St.Rep. 341; Capital City Light & Fuel Co. v. Tallahassee, 186 U.S. 401, 22 S.Ct. 866, 46 L.Ed. 1219; Gibbs v. [Consolidated] Gas Co., 130 U.S. 396, 9 S.Ct. 553, 32 L.Ed. 979. This obligation to serve the public also arises independent of contract with the municipality in the shape of a franchise, or of a contract with the individual. Bessemer Waterworks Co. v. City of Bessemer [198 Ala. 535], 73 So. 905. Frequently, it is 'indispensable to the public service corporation to use the streets, and it is sometimes said that the duty to serve arises from this right. However, the right to use the streets is granted as an incident of the public nature of the service which the public service corporation performs, and it cannot therefore be said that the duty to serve the public arises from the privilege of using the street. Neither does this public duty arise from a private contract with an individual.' It exists independent of contract.

█ " 'The law cannot compel any individual to serve another; but it does make it clear that any one who undertakes a public employment is thereby committed to the performance of that service in the way which the law says that conditions demand for the protection of the public.' 'This duty, placed upon every one exercising a public calling, is primarily a duty to serve every man who is a member of the public needing that service. Implicit is this primary duty; necessarily involved in its full performance are various requirements. Not only must all be served, they must have adequate service; not only must they not be charged extortionate rates, but there must be no discrimination practiced. In such an elaborated statement there is not more than the plain recital of the present recognition of different aspects of public duty. But it will be noticed that the duty to serve the public is the fundamental principle from which all the rules of public service may be derived.' 13 M.A.L. 22; Cooley's Const. Lim. (6th Ed.) p. 651, and cases cited; Angel & Ames on Corp. 13; State v. Consumers' Gas Trust Co., 157 Ind. 345, 352, 61 N.E. 674, 55 L.R.A. 245; Freeman v. Macon Gas Light & Water Co., 126 Ga. 843, 56 S.E. 61, 7 L.R.A.,N.S., 917; State ex rel. Weatherly v. Birmingham Waterworks Co., 185 Ala. 388, 403, 64 So. 23, Ann.Cas.1916B, 166; City of Montgomery v. Greene 180 Ala. 322, 60 So. 900; City of Mobile v. Bienville Co., 130 Ala. [379] 384, 30 So. 445.

█ "There are, however, many conditions precedent to the obligation of any public service corporation or company to serve any particular applicant. As Mr. Wyman says:

" 'There is no obligation to render service to a particular applicant until he puts himself in a proper position to demand that service. It is the law again which determines under what conditions the service company may properly be held to respond to an application. In most services the

law has made it plain what conditions there are as to time and place, method and manner. All these conditions must be performed by the particular applicant, though he be of the class to which the duty pertains, before a present duty is owed him, even though he wishes a service in respect to which there has been public profession of a general sort. Undoubtedly the most noteworthy example of these conditions which must be performed is the necessity of an offer of prepayment before any service will be due. Stated technically, the company rendering the service is therefore not in default until performance of the conditions precedent has been tendered. What conditions are thus insisted upon depend upon how the law has thought proper to safeguard all concerned.' 13 M.A.L. 33, 37.

■ "Service must be asked at a proper time, at a proper place, in proper form, and in a proper manner. *That is to say, the applicant must submit to such reasonable conditions as the public service company sees fit to impose.* City of Montgomery v. Greene, 180 Ala. 322, 60 So. 900; Bessemer Waterworks Co. v. City of Bessemer, [198 Ala 535], 73 So. 905; Pullman Car Co. v. Krauss, 145 Ala. 395, 40 So. 398, 4 L.R.A.,N.S., 103, 8 Ann.Cas. 218; Watauga Water Co. v. Wolfe, 99 Tenn. 429, 41 S.W. 1060, 63 Am.St.Rep. 841; Shepard v. Milwaukee Gaslight Co., 6 Wis. 539, 70 Am.Dec. 479; Illinois Cent. Ry. Co. v. Smith, 85 Miss. 349, 37 So. 643, 70 L.R.A. 642 [107 Am.St.Rep. 293]; 4 Elliott on Railroads, §§ 1574–1576; 2 Hutchinson on Carriers, §§ 964, 966. * * *

■ "We deduce from the foregoing authorities that, in an action against a public service company for failure to serve an applicant entitled to service, it is necessary to allege: (1) That the defendant was engaged in the discharge of a public service; (2) that the plaintiff came within the class of people whom the defendant was bound to serve; (3) that the plaintiff had performed all reasonable conditions precedent entitling him to that service; (4) that the defendant wrongfully refused to furnish the service; and (5) that the plaintiff had thereby been damaged."

In addition to the common law on the subject, section 27, Title 4, Code of 1940, provides as follows:

"When any municipality has acquired or set apart land for use as a municipal airport, the council, or other governing body, of such municipality shall have the power and authority to develop the same into a municipal airport and to improve, equip, maintain, operate, regulate, and police the same. Such governing body may adopt regulations for the government of the municipal airports of such municipality, provide penalties for violation of such regulations, and establish and collect fees, tolls and charges for the use of such airports or parts thereof or any facilities thereof or any equipment thereof. The power and authority committed by this section to the governing body of such municipality may be by it conferred upon a board or officer of such municipality, or upon any board created by law for the government of the parks of such municipality, subject always, however, to the superior control of such governing body."

■■ The rules and regulations adopted by the City of Birmingham governing the operation of its municipal airport are not set forth in the complaint, but each count does show that appellant was barred from the airport, or denied the use of some of its facilities for and on account of his violation of some rule or regulation. Construing the pleading most strongly against the pleader, as we must do, the presumption is the rules and regulations violated were reasonable.

■ Patrons of a municipal airport have no right to make use of the field or its facilities except in accordance with reasonable rules and regulations adopted by the city for its operation. City of Spokane v. Williams, 157 Wash. 120, 288 P. 258.

■ A denial of such use under these circumstances is not violative of either section 1, 6 or 22 of the Constitution of Alabama, or the Fifth or Fourteenth Amendment of the Constitution of the United States.

■ The Civil Aeronautics Act of 1938, as amended in 1940, of the Congress, does not control the questions here involved.

Demurrers were properly sustained, and the cause is due to be, and is, affirmed.

Affirmed.

GARDNER, C. J., and BOULDIN, FOSTER, and STAKELY, JJ., concur.